in Flint v. Bloomingdale. Mr. Reynes, I see that, am I pronouncing your name right, sir? Yes, that's fine. Reynes. I care people mispronounce my name. How do I pronounce yours? Reynes. Reynes, okay. Mr. Reynes, you've reserved two minutes, is that correct? Yes. For what it's worth, you're on the wrong side. It doesn't matter. And then, so you will have your eight minutes, and then you may begin when you're ready, sir. Thank you, your honor. My name is Michael Reynes. I am counsel for Rita Flynn, the appellant in this case, who is with me here at the table. The issue here is, first, on the First Amendment claim, that it's hard to imagine a plaintiff speaking out more as a matter of public concern. In what? In which speech are you talking about? And we're concentrating only on the lawsuits. Okay. And especially the second lawsuit in the Supreme Court, State Supreme Court. Well, when you say you're concentrating only on the lawsuits, I take it what you mean is your claim is based solely on the speech of the lawsuits. It is based solely on those lawsuits. Sorry about that. But I think what's interesting, in which there's part of the debate in the papers, is that Judge Braccetti, on the first claim that was decided on the Braccetti issue, he said there was no denying that that speech was on a matter of public concern. Now, the content of the speech that was in the lawsuits is, in the second ruling, which is now res judicata, that the speech that she had previously claimed in Flynn 1, Flynn 2, she was retaliated against for, that that speech was speech as an employee. That's correct. And there's been no argument here about res judicata or even, well, the point in that first case, that litigated the issue of her speech to the high-level employees or managers at DOCS. And most importantly, Judge Braccetti only ruled that the speech was not protected because of Braccetti. But it got past the point of that the speech itself, the content of it, was a matter of public concern. What we have here, in this case, is the issue of when the speech is in a lawsuit, when Ms. Flynn, in the most public way, in debating and in bringing... The topic, the subject of the lawsuits was matters relating to her own personal employment. It wasn't a challenge to the DOCS broad system of dealing with sex offenders, right? It was for damages. She was talking about retaliation directed against her. It doesn't really seem, if you look at the paragraphs on the relief that was sought that she was seeking, that this was to pursue a broader public purpose. I would strenuously disagree for several reasons. What relief is sought in the complaints in the nature of a broader concern as opposed to damages or an injunction against future retaliation against her, for example? I think the issue is the case law even does not support a narrow reading of just those, just a prayer for relief. Now, the prayer for relief is for lost overtime. There's a bit of a slate of hand, which did not really come out, that the second lawsuit, the Supreme Court case, did not claim any harm for reputation, anxiety, the issues of standing in her community, emotional harm. That was in the first lawsuit, but because of there being a First Amendment claim, the second claim only had the 75B whistleblower claim, civil service. There are no claims for emotional harm in that case, so there cannot be, because all that's available is, as you say, some overtime and some personal, but if you look at her language, and all through the complaint, all through the issues that Ms. Flynn has raised about serious community safety issues. I'm interested in trying to figure out how we not bootstrap employer discipline that might be legitimate onto First Amendment language or grounds. How do we prevent when, as Judge Hinn pointed out, that the lawsuits are asking for damages and the like, how do we not envelop all cases such that all somebody has to do is marry a First Amendment complaint to an employer discipline complaint? I mean, and if you could specifically speak to the Rotolo case, which surfaced this concern. I'd be happy to. I think that is one of the big problems, I think, with Apelli's argument, is that it rests almost solely on Rotolo. So does the district court decision, because in Rotolio, there was a focus on the motivation, almost an exclusive focus, on what is the motivation of filing a lawsuit. Now, Connick instructs in looking at- If you could answer the first question. How do we not bootstrap these issues, and then we can talk about where the cases lead us, if you don't mind, please. Okay. Well, my- Thank you, Your Honor. My understanding of Rotolio is it does not deal with the issue, if you're referring to bootstrap about filing a lawsuit as public speech. It does not rule at all on the issue, and the district court did in Rotolo. It does not rule on the issue of is filing a lawsuit in itself not something that's covered as speech. In fact, other cases, like the Gelodner case, do refer to- It does refer to the speech that's through a lawsuit. And the district court here did not- It specifically said that it wasn't going to rule on the issue of whether filing a lawsuit is a bootstrap and converts the speech into- You're not offering a line or a doctrinal analysis that'll help us distinguish between the two to prevent it? Do you have one for us that we could do? Well, I think the line is in the Gelodner case. I think the other issue is that it's very hard to conceive that being in a court, speaking in a court, is not one of the essences of our democracy in having debates and a vigorous debate about all sorts of social issues and safety. Now here, as we've spoken about, Ms. Flynn did everything to raise issues of public concern. I was starting to say that one of the things in the complaint is raising, at one point, grave concerns regarding serious community safety issues. That's something that's discussed in the complaint. But what do we make of the fact that she resigned before being terminated? I mean, you know under our case law that that short circuits the termination process and might make it difficult to make sure that she had all the procedural protections she needed. The resignation issue is only relevant to the procedural due process claim. Sorry if we're on that. No, that's right. I got it. What do I make of that? Yeah. Thank you. I apologize. So what we make of that is the heart of the procedural due process claim is that she was not given due process because, in many ways, because of her seeking criminal counsel especially, her asking for... If she elected not to proceed, not to make use of process that was available to her, how can you say she was not given due process? Well, her election, it's not a free election. She's there at an arbitration. She is asking... She could have brought an article 78? She challenged what happened to her? She could have, but that's not... She could have brought one. Well, but then... That's not the... If there is a procedure that's available to her and she fails to take advantage of it, then the due process claim is precluded, isn't it? No, it's not in this case. Well, first of all, the district court ruled that it was not going to whether Ms. Flynn was required to take advantage of close deprivation. Because it was dismissing on other grounds, but isn't that a fair argument by the defendants? No, because the case law presents that when an act is random and unauthorized, that is when the Hellenic-American case says that you have to use post-deprivation hearing because there was no warning about it. Here, what we have is a high-level labor relations manager who was right there making the decisions. So it comes outside of that requirement. The Zinnemann Supreme Court case is quite specific on that, and that's mentioned in much of the case law, that the Hellenic standard is limited and it does not apply to actions by high-level officials. The de Blasio case also is very much focused on when someone is a high-level actor, they are not required to have used the post-deprivation Article 78 hearing process. Now, could she have done that? This is something that was discussed at the district court in the argument. Yes, she could have, but the issue is, was she required? The court did not want to wade into and was specific about at SPA-42 in the special appendix, and before that, that he was not going to do that. But what's most important is on the procedural due process claim, the court did not even acknowledge the fact about the counsel and Ms. Flynn asking for counsel and asking for an adjournment. That was not even recognized in that procedural due process claim. It was mentioned in the substantive due process claim, which is not even before this court. It's not part of the appeal. So I think we'll have you back on rebuttal. Thank you so much. Okay, thank you. Mr. Hill, you have 10 minutes. Thank you, Judge. May it please the court, excuse me. This is an inventive two claims that have been brought, but the analysis is rather straightforward. I guess I'll start where Your Honor left off, which is with the procedural due process claim. Here we have a situation where an employee has resigned her employment and is now claiming that that resignation was coerced unlawfully, I might add. In that situation, this court has already held in Giglio versus Dunn, which is a 1984 case which has been cited since that time positively, that there's nothing else that could be provided except for a post deprivation hearing, which as Your Honors are all aware, is made available through Article 78 of the New York State CPLR. But is it really fair to say that she voluntarily resigned given the imbalance, given what was being threatened of her? Is that something that we should be concerned at, especially given who the dependent was in all of this, like Norman State? Well, Judge, that is certainly the appellant's accusation is that her resignation was coerced, but the fact remains that she did resign and choose not to go forward with an arbitration. And so the manner in which the law provides for her to challenge what she says is a coerced resignation can only be through an Article 78. It would be impractical, as this court has said before, to have a pre-resignation hearing in that scenario. And I don't think that's even what they're arguing here. So I would say it would be improper to use 42 U.S.C. 1983 as an end-around to Article 78 to challenge the manner in which the process was provided, which is exactly what they're arguing. So I think it's a simple issue. I don't think you would dispute that our lawsuits have said that public employees initiating lawsuits about discrimination in the workplace constitutes speech of a matter of public concern. Can you tell me how you would distinguish those cases from this one? Certainly, Your Honor. I would recognize that there are cases, some of which have been cited by counsel in appellant's papers, where you have a lawsuit or a claim that has been filed that touches on a broader issue that goes beyond the issues pertaining to a specific employee or a specific employee's complaints regarding the conditions of his or her employment. In those cases, for example, in the Glodner case, which was mentioned by counsel, there you have a case where someone who's a contractor for a municipality has been discriminated against pursuant to, as he alleges in that case, a policy that has been enforced within the community of dual arrest. That lawsuit that was deemed protected had nothing to do with the conditions of his employment. It didn't arise out of his employment as these lawsuits here clearly did. So I think that what the case law says, Your Honor, writ large, is that when you have a case of widespread discrimination, when you have a case of alleged widespread corruption, when you have a case where somebody is filing a claim in order to protect co-workers, for example, or challenge a policy... Well, if you could help me just draw the line a little better between those that you concede and a state's failure to develop a discharge plan for a potentially dangerous... Well, a discharge plan that is specific to a single parolee, which is what the allegations are, which concerns a single employee that is charged with overseeing that discharge or participating in it. If we are going to say that every single issue concerning every single parolee is a matter of public concern, then I think to the point you raised earlier, at least by reference, is that any claim would be viable. I mean, those claims are a matter of public concern, and Judge Presetti so held, but the issue was that she was speaking not as a citizen, but as an employee, and that was the problem with the first lawsuit, right? That is what Judge Presetti held, yes, Your Honor. The public might be concerned about a discharge plan for even a single parolee if it creates a dangerous situation. Wouldn't you agree? Well, I guess a couple of things I would say in response to that, Your Honor. As I said, in this case, the speech in question is the lawsuit. I'm sorry, as counsel said, the speech in question is the lawsuits. Well, I know we were there, but I thought you argued on the first part that the issue where it's a discharge plan for a single employee involving a single parolee involving a single employee, that that is not a matter of public concern. What I'm suggesting to you is that perhaps it is a matter of public concern because the public would be concerned even about one dangerous parolee being, you know, let out into a situation where there are temptations, et cetera. Well, I take the point, Your Honor, and I think that that is very much the reasoning that Judge Presetti adopted. I think that here... So it's the same subject matter, but now in the context of the current lawsuit. In the current lawsuit, she's no longer speaking as an employee, or why does this fail the Garcetti test? It fails the Garcetti test because she is not speaking in this context in her lawsuits on a matter of public concern. And that is what Judge Halperin ruled, and that is what they are challenging. And I think the key... If it was a matter of public concern earlier, why are you arguing that it's no longer a matter of public concern? I'm arguing that in her lawsuits, it's not plausibly alleged that her lawsuits constitute a matter of public concern as themselves, as lawsuits. She files the initial claim. Judge Presetti determines that... The speech is now the lawsuit, is what you're saying. Correct, Your Honor. And the lawsuit is not a matter of public concern in this context because she's only seeking relief that helps her out. Correct, and there's no indication and there's no allegation that the public at large is concerned with her personal quest to be put back in her position or for any of the other things that she claims in these lawsuits. I would note that the context of these lawsuits is different from the context in which the speech was originally made. And I tried to explain this in my papers, but the speech is made to her superiors within docs and then the lawsuit is filed. And the context in which that lawsuit is filed is years after the alleged... The initial speech was made. There's no plausible allegation that those subsequent lawsuits would have had any effect on even on that DOE, even on that parolee. Well, isn't it the case that the speech that she is now complaining about, the speech that she says that she was retaliated against for at this point is the speech of bringing a lawsuit? That's correct, Your Honor. When she brought that first and second lawsuit, she was complaining about retaliation, about her having previously spoken, which was on a matter of public concern, but she was speaking as an employee as the court ruled. But in this suit, she's complaining about the speech that was... The speech was the bringing of the lawsuit. And she says, I'm being discriminated against for having brought a lawsuit. And that lawsuit was to vindicate personal interests. That's exactly correct, Your Honor. You said it much more eloquently than I did,  And that's the argument that we've submitted. She's not complaining in this lawsuit about being retaliated against for having advocated with respect to the parolee, the dangerous parolee. She's saying she was retaliated for having brought a lawsuit to protect her personal financial rights. That's exactly right. The alleged protected conduct here is the lawsuits, the filing of the lawsuits themselves, Your Honor. Thank you so much. Mr. Reines, you have two minutes. I thought I had the floor before. All right. Thank you, Your Honor. There's no Garcetti issue, as the law is discussing. In this case, it's just about the lawsuits. And it goes back to what Judge Chin was saying. It's about what was the content of those lawsuits. And is it something that's a matter of public concern? What's happening here is that, in my view, there's an attempt to carve an exception on public's filing by going through and finding one or two words that are seeking personal remedy. If you go through these cases. I don't know what you mean by one or two words. I mean, that's what the lawsuit was seeking, was personal remedies. But the other lawsuits that we cite, they seek. In lawsuits, they're still seeking something. Golodner sought emotional harm. It also brought up the issue of unlawful arrest, generally. But it sought some. The Cottarello case is found to be a matter of public concern, because it concerned department policies and a group of officers who were alleging discrimination. Well, it's not defeated here as a matter of public concern, because Ms. Flynn didn't speak out about a group of officers. She spoke about an application of policies that affect society. I am concerned about a slippery slope here. You know, the lawsuit alleging a violation of First Amendment rights fails. And then by now couching it as a new lawsuit, suddenly it's protected speech. That could happen in every case. A public employee sues, brings a lawsuit. I mean, a public employee loses on the Garcetti claim and resigns. And then brings a second lawsuit, now arguing that the first lawsuit is the protected speech. Couldn't that happen in every single case? It could happen in terms of looking at what this lawsuit says. What's happened here is after Ms. Flynn filed those two lawsuits, docs went after her. And so the issue of is the lawsuit speech is incredibly integral to trying to make an effect on society. We're not just talking about a lawsuit in itself and a bare bones. We're talking about the kinds of issues she's raised in the plaintiff's papers at page 32. They go through the issues about the mental hygiene law was not being complied with. That's a broad statement about how it's being applied in this location. There are allegations about what happens when you have a particular spot for treatment that's 100 yards away from an elementary school. These are broad issues about the lack of supportive and structured arrangements for treatment of a- I agree, but a lawsuit to vindicate her individual interests, does that become a matter of public concern? The issue is- We're back to what we were talking about earlier and what Judge Bruschetti acknowledged that the public should be concerned about even this individual case. I think the issue of a sliding scale is really about how we define personal grievance. Because I don't think it's a slippery slope. When you look at some of the facts like in Sousa, having to do with the whole issue of- I'm sorry, Cioffa, about the hazing of players and whether there were administrative failures there. Those are claims that that person brought. Now, they also had personal claims, but they were bringing that to their attention. The Sousa case is probably the best one at making clear that we can't just look at- When we're talking about the content and the form, we can't just be mechanical that, oh, the form is the last few sentences of our prayer for relief. We're supposed to look at both the content and the context. The content- Otherwise, we're going to be so formalistic and focus just on- It's A117, A116 and 17 in the appendix, what was actually in the prayer for relief. Now, should those three sentences trump or be completely dispositive as to all the other issues that are brought up about the public? I think that's what we're talking about in terms of a slippery slope. We submit that's not a slippery slope. We submit that there's so much information in this complaint about public issues, about keeping the public safe from someone who could have really harmed the public that it's formalistic and making an exception just to swallow the rule if we then say, because the complaint asks for individual relief, all these complaints ask for some individual relief. So then the issue becomes- The thing is that since the business of public agencies is all a matter of public concern and the efficient administration of public agencies is a matter of public concern and the lawful operation of public agencies is a matter of public concern, there isn't any- There's hardly any complaint. There's hardly any speech of a complaining nature that can be made with respect to the operation of a public agency by its employees that can't be characterized as a matter of public concern. Is it a matter of public concern whether public agencies are operated without discrimination or are operated lawfully or are operated according to law? All those things can be couched as persuasively as matters of public concern. The core of the right, the core of the First Amendment right has to do with circumstances where somebody says, I was fired because I was wearing a Biden pin or a Trump pin. I was fired because outside the context of my work, I advocated some cause that's unpopular with my superiors. But most of the litigated cases involve employees who are complaining about their own duties and their disagreements as to the performance of those duties and the like resulting in adverse employment actions. But that's really, that is squeezing into this area of law something that is not what it's really designed for. Those are employment disputes. And even when they have to do with issues, which they always do, they always have to do with issues that are a matter of public concern to a greater or lesser degree because of the public concern over public agencies and their propriety and lawfulness. I would beg to differ in the sense that this is not just about any public agency and is it functioning well administratively. This is not the case like- No, but her initial complaint was, you're making a mistake. And this agency is charged with the supervision of parolees and it's making a mistake. It's making a mistake in its decision with respect to this particular parolee. And that's what infuses the entire course of the history with your claim, which is an understandable one, that it's a matter of public concern because a dangerous parolee is dangerous. But every action of public agencies in some way or other affects the public and can properly be characterized as a matter of public concern. There's a case, I can give you the site, where somebody makes a claim about how disability benefits are administered in their agency. That's not a matter of public concern. That person was advocating, and actually for a group of people, about how the agency was functioning administratively. That's not this case. Are you arguing that it was acting unlawfully? That it was not following the administrative policies and it was breaking the disability policies of that agency. Policy or law? Pardon? Law, breaking the law. There is a breaking the law allegation here. The mental hygiene law requires, yes. It's a matter of public concern when public agencies break the law. The internal administration and even internal breaking of the law is not, I think in this case law, is not always per se considered a- No, no, I'm talking about the fact that an agency's breaking the law can always be characterized as a matter of public concern. The public doesn't want its agencies breaking the law. If you allege that the agency is breaking the law, you're alleging a matter that is a public can be described in a matter appropriately. I'm not talking as a legal term. I'm talking about, is it a matter, is the public concerned when agencies break the law? Yes, they are. The public is concerned. I would just add the issue of motivation from Rotolo and it's discussed in Sousa is that this circuit has looked at that just somebody having a personal motivation or motive being one part of why they brought the case for personal grievances, it's not sufficient to preclude looking at the speech in a broader context. That's what Sousa actually discusses that Rotolo has contributed to a lack of clarity in addressing these cases and has caused some courts to say, well, as long as we can find any personal motivation at all, it should be dismissed. Well, that's not, when you look at cases like Sousa and Chaffee, those cases raised public policy issues about the safety of the hazing case of people in an administrative setting, a school setting, but just because they were claiming something personally, and Sousa clarified this, did not mean that they were not speaking in the matter of public concern.  We'll take it under advisement. We appreciate it.